IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RALPH HAROLD RICKETTS,

                   Plaintiff,

v.

WISCONSIN SECURE HEALTH SERVICE
UNIT, MANAGER MS. WATERMAN, and M.D.
EILEEN GAVIN,

                   Defendants.

OPINION AND ORDER

19-cv-491-wmc

*Pro se* plaintiff Ralph Ricketts filed this lawsuit under 42 U.S.C. § 1983, claiming that he was unlawfully denied medication while he was incarcerated at the Wisconsin Secure Program Facility. Because Ricketts is a prisoner, the court must screen his complaint under 28 U.S.C. § 1915(e)(2) to determine whether he may proceed with the case. Having reviewed Rickett's allegations in his complaint and supplements (dkt. ##1, 7, 8, 11, 12), the court finds that his claims as currently pled do not support a federal claim. Accordingly, if Ricketts wants to avoid dismissal, he must file an amended complaint that addresses the deficiencies described below.

ALLEGATIONS OF FACT[1]

Plaintiff Ralph Ricketts is an inmate at the Wisconsin Secure Program Facility ("WSPF") in Boscobel, Wisconsin. Ricketts alleges that he experienced a traumatic brain

---

[1] As it does with all *pro se* litigants' complaints, the court will read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

injury prior to his confinement in 2005 that left him with epilepsy, Bell's palsy,[2] loss of hearing in his right ear, and partial loss of vision in his right eye. (Suppl. (dkt. #11) 1.) Ricketts has named three defendants in this case: the WSPF Health Service Unit ("HSU"), Manager Ms. Waterman, and M.D. Eileen Gavin. (Compl. (dkt. #1) 1.)

On January 12, 2019, Officer Finnel was doing the noon medication pass and stopped by Ricketts' cell to give him his prescribed medications. According to Ricketts, Finnel placed one 800 mg tablet of gabapentin and three 100 mg tablets of venlafaxine into a paper cup and then placed the cup in Ricketts' cell trap door for him to take. Ricketts took the cup and attempted to pour the tablets into his hand, but three of them spilled onto the floor. Ricketts then took the one venlafaxine tablet that was in his hand, and bent down to pick up the tablets that had fallen to the floor. As he was bending down, however, Finnel opened the cell door and screamed at Ricketts to stop, give him the pills, and get to the back of the cell. Ricketts was then handcuffed and taken to segregation without being permitted to take the medication that had fallen to the ground. Moreover, as a result of the incident, his gabapentin -- which he took to manage seizures -- was apparently discontinued by the health unit staff.

Ricketts says that he had been on a high dose of gabapentin -- 800 mg, four times a day -- and any decrease in dosage must be done in stages. Ricketts alleges that by the morning of January 13, 2019, he had missed four doses and his body was going into shock,

---

[2] "Bell's palsy is a form of temporary facial paralysis resulting from damage or trauma to the facial nerves." *Bell's Palsy Fact Sheet*, Nat'l Inst. of Neurological Disorders & Stroke (accessed Jan. 13, 2022) https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Bells-Palsy-Fact-Sheet.

he was feeling sick, and feeling symptoms of a seizure (specifically the "aura feeling," similar to vertigo). By that afternoon, Ricketts had missed seven doses of his seizure medication, and when he got up to use the restroom, he immediately began to feel dizzy and that was the last thing he could remember. When he regained consciousness, he was being loaded onto a stretcher by several EMTs, Captain Fedie, and others. His head hurt badly, and there was a puddle of blood on the floor.

Ricketts was taken to the Gunderson, Boscobel Hospital, where a doctor informed him that they believed that he had had a grand mal seizure. Ricketts alleges that his doctor "could not understand why [his] life sustaining seizure medication was stopped." (Compl. (dkt. #1) at 5-6.) He asserts that "Registered Nurse Ms. Tammy West and Registered Nurse Mr. Kemerling legally had no right to discontinue [his] seizure medication." (*Id.* at 6.)

The day after his seizure, Ricketts was seen by Dr. Gavin, who reinstated his medication, but Ricketts did not receive a dose again until January 17, 2019. Ricketts claims that Dr. Gavin should have continued with his original prescription rather than ordering a new one, and that her decision to do so caused a delay in him receiving the medication, which amounts to medical negligence. Ricketts alleges that as a result of the denial of his medication in January of 2019, his body and health have taken a complete turn for the worse. (Suppl. (dkt. #16) 1.)

Six months later, on June 21, 2019, Ricketts alleges that he was again denied doses of gabapentin. (Suppl. (dkt. #7).) Specifically, he claims that he did not receive his morning, noon, and evening doses of his gabapentin and that it was not until 8:45p.m.

that day that he finally received an 800 mg tablet. Ricketts says he was initially told that the gabapentin was not on the medication cart, but later learned the reason he didn't get his doses was because one of the correctional officers had stolen five "gabapentin cards" off of the medication cart. Because there is a pharmacy on site, Ricketts explains that there is "no reason that [he] had to miss 3 doses of this life sustaining medication." (*Id.* at 2.)

The court received another letter from Ricketts on July 8, 2019, in which he reiterated his claims that he did not receive three doses of gabapentin on June 21, 2019. (Suppl. (dkt. #8) 1.) He also wrote that on June 14, 2019, he had a virtual appointment with his neurologist regarding his seizures. According to Ricketts, his neurologist recommended that he start a new seizure medication -- zonisamide -- in addition to his current dosage of gabapentin. As of the date he wrote the letter, he had not yet been seen by the institution doctor, Dr. Gavin, to review his neurologist's recommendation. He concluded: "I need help. All I get from these Health Services is harm. My body cannot take much more of this." (*Id.* at 2.)

On July 10, 2019, Ricketts had a meeting with Dr. Gavin. (Suppl. (dkt. #11) 2.) She informed Ricketts that she did not discontinue his medication on January 12, 2019, because she was not at the institution that day, nor did she give the directive over the phone. Instead, Ricketts writes, "It was just done." (*Id.*) Ricketts notes that RN West and Kemerling were at the institution and that they did not have the authority to discontinue his medication, "but they did." (*Id.*) Ricketts claims that he "had pleaded for help to treat [his] seizures and symptoms" but that "a 1/3 of them were ignored" and that no one would give him the name of the person who stopped his medication in January of

4

2019.  (*Id.* at 3.)

On September 18, 2019, Ricketts received a letter from APNP Sandra McArdle in which she discontinued Ricketts' Acetaminophen prescription on the grounds that his chart showed no refill of the medication in the last three months.  (Suppl. (dkt. #15) 1.)  Ricketts objects to this discontinuation, alleging that APNP McArdle herself refilled the medication on August 17, 2019.

OPINION

I. **Eighth Amendment**

The Eighth Amendment requires prison officials "to provide medical care for those whom it is punishing by incarceration." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Ricketts has alleged some facts that suggest an Eighth Amendment violation; however, as explained below, he has not named the proper defendants.

As an initial matter, plaintiff may not proceed against the Wisconsin Secure Health Service Unit because it is not a suable entity under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (§ 1983 claims may only be brought against "persons" and a state or its entities are not persons); *see also Flowers v. Med. Directors (Unknown)*, No. 18-CV-1045-WMC, 2019 WL 5102176, at *1 (W.D. Wis. Oct. 11, 2019) ("A prison or department in a prison cannot be sued because it cannot accept service of the complaint." (quoting *Smith v. Knox Cnty. Jail*, 666 F3d 1037, 1040 (7th Cir. 2012)).  Therefore, the court will dismiss this defendant.

5

As for defendants Waterman and Gavin, a prisoner may prevail on a claim under the Eighth Amendment by showing that the defendant acted with "deliberate indifference" to a "substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). A substantial risk of serious harm is "so great" that it is "almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005).

Plaintiff here claims that he was denied multiple doses of a strong seizure medication in January of 2019. This is certainly enough to establish the "substantial risk of serious harm" element -- indeed, not only did the denial of medication "risk" harm, but that harm was realized when plaintiff suffered from a seizure, from which he has still not fully recovered. Similarly, plaintiff's allegation that he was denied three doses of his seizure medication in June of 2019 is enough to establish this element. Plaintiff's other allegations, however, do not give rise to an Eighth Amendment claim. Specifically, neither his claim that he was denied an acetaminophen refill nor his claim of a delayed review by Dr. Gavin of a new seizure medication prescription in July of 2019 give rise to a reasonable inference that he was put at a substantial risk of serious harm.

As to the "deliberate indifference" prong, however, plaintiff has not alleged sufficient facts against the remaining two named defendants to state a claim. He has not alleged that defendant Waterman was involved at all in the decisions to deny Ricketts' medication, let alone handled his need for medication with deliberate indifference. Yet

"individual liability under § 1983 requires personal involvement in the alleged constitutional violation." *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (citation omitted). Accordingly, Waterman must be dismissed.

As for defendant Gavin, Ricketts specifically alleges in a supplement to his complaint that she did *not* make the decision to discontinue plaintiff's seizure medication when he was placed in segregation on January 13, 2019. (Suppl. (dkt. #11) 2.) Although plaintiff claims that Gavin was "medically negligent" by deciding to write him a new gabapentin prescription on January 14, 2019, rather than continue his old one, causing a delay in the receipt of his medication, these allegations do not suggest deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) ("Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'") (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)).

In fairness, plaintiff's does appear to believe that Registered Nurses Tammy West and Mr. Kemerling -- who were not named as defendants -- may have been the ones to stop his medication in January of 2019. (*See* Compl. (dkt. #1) 6 ("Registered Nurse Ms. Tammy West and Registered Nurse Mr. Kemerling legally had no right to discontinue my seizure medication.").) However, he still fails to allege any facts that would suggest that they acted with deliberate indifference. Again, deliberate indifference requires a

7

subjectively culpable state of mind -- the defendant must know of the risk of harm yet disregard that risk. *Edwards*, 478 F.3d at 831.

## II. Leave to Amend

Since plaintiff's allegations do not support a federal claim against any defendant, the court declines to exercise supplemental jurisdiction over any state law claims, and this lawsuit is subject to dismissal. However, it is conceivable that plaintiff omitted details that may support an inference of deliberate indifference by Waterman or Gavin, or other potential defendants, namely West and/or Kemerling. Therefore, the court will give him a brief window of time to file an amended complaint. In so doing, plaintiff may wish to consider the following questions: Who knew that Ricketts was not receiving his seizure medication? Did he complain to any officers or health services personnel that he was not receiving his medication? What steps, if any, did those individuals take after learning that Ricketts was not receiving the proper medication? If plaintiff is unsure of the names of any of the individuals, then he may identify them in his proposed amended complaint as either "John Doe" or "Jane Doe" defendants. Then, once the court grants him leave to proceed, he may seek discovery to identify those defendants and amend his complaint again at a later date in this lawsuit. If plaintiff files a proposed amended complaint by the deadline set forth below, the court will screen it as required by 28 U.S.C. §§ 1915(e)(2), 1915A.

ORDER

IT IS ORDERED that:

1) Plaintiff Ralph Ricketts is DENIED leave to proceed on any claims, and his complaint, including any claims raised in supplements, are DISMISSED without prejudice.

2) Plaintiff has until **February 4, 2022**, to file an amended complaint that states a federal claim upon which relief can be granted.  If plaintiff fails to file an amended complaint by that deadline, this lawsuit will be dismissed with prejudice, for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b).

Entered this 14th day of January, 2022.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge